DOROTHY POPE LONG, A MENTAL INCOMPETENT, BY HER GUARDIAN *AD LITEM*, EDWARD J. MacDONALD, PLAINTIFF-APPELLANT AND RESPONDENT, v. MORRIS LANDY AND CELIA LANDY, HIS WIFE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS-RESPONDENTS, v. A. PARKER LONG, ADMINISTRATOR OF THE ESTATE OF JOHN RUSSELL LONG, DECEASED, THIRD-PARTY DEFENDANT-APPELLANT.

Argued February 21, 1961—Decided May 8, 1961.

*Mr. H. Hurlburt Tomlin* argued the cause for plaintiff Dorothy Pope Long, by her Guardian *ad litem,* Edward J. MacDonald.

*Mr. Sidney P. McCord, Jr.* argued the cause for defendants and third-party plaintiffs, Morris and Celia Landy (*Messrs. Starr, Summerill & Davis,* attorneys).

*Mr. William C. Golshalk* argued the cause for third-party defendant, A. Parker Long, Administrator of the Estate of John Russell Long, deceased (*Mr. Edward W. Eichmann,* attorney).

The opinion of the court was delivered by

HANEMAN, J.  A. Parker Long, guardian *ad litem* of Dorothy Pope Long, an incompetent and widow of John

Russell Long, brought suit against Morris and Celia Landy, alleging that Mrs. Long sustained injuries as a result of a collision of a motor vehicle operated by her husband with a vehicle operated by Morris Landy and owned by Celia Landy. The Landys, in turn, joined A. Parker Long, administrator of the estate of John Russell Long, as a third-party defendant, alleging that Long was liable in whole or in part for Mrs. Long's alleged injuries as a sole or joint tortfeasor. Since the guardian and administrator were the same person, Edward J. MacDonald was appointed guardian *ad litem* for Mrs. Long and substituted as a party plaintiff. The complaint was amended by adding a count seeking direct recovery by the wife against her husband's estate. Prior to trial the administrator moved for a summary judgment as against both the plaintiff and the third-party plaintiff on the ground of interspousal immunity. The motion was denied *Long v. Landy*, 60 *N. J. Super.* 362 (1960). At the close of defendants' cases the trial court granted the Landys' motion to dismiss for lack of proof of negligence and denied a motion by the administrator for dismissal as to both plaintiff and the Landys, again based on interspousal immunity. The jury rendered a verdict against the administrator. Subsequently the administrator moved to set off against the judgment the value of various items of personalty, title to which was jointly held by the Longs during the husband's lifetime and which devolved upon Mrs. Long at her husband's death, the proceeds of several insurance policies, and money received from the John Russell Long estate. The trial court denied this motion. Both plaintiff and the administrator appealed to the Appellate Division. The administrator appealed from the final judgment and denial of his motion for set-off and plaintiff appealed from the judgment of dismissal as to the Landys. We certified the appeal on our own motion, *R. R.* 1:10–1(a).

The facts giving rise to the suit are as follows: On February 15, 1958 at around six o'clock in the evening, Mr. and Mrs. Long were proceeding by automobile in a westerly

direction on Route 70 toward Camden. Mr. Long was operating the automobile and his wife sat beside him on the front seat. At the same time and place Mr. and Mrs. Landy were proceeding by automobile in an easterly direction. Mr. Landy was operating the automobile and his wife sat beside him in the front seat. A collision occurred between the two cars in Manchester. As a result of injuries sustained, Mr. Long died two days later and Mrs. Long, who received a head injury, was rendered mentally incompetent. The Landys received less grievous injuries.

At the site of the accident, Route 70 is a two-lane concrete highway, one heading in each direction, with a slightly sloping gravel shoulder adjacent to each concrete strip. It was near dusk and snowing, the highway being covered with an inch or two of snow.

The sole eyewitnesses to the accident capable of testifying were the Landys. Mr. Landy's testimony is to the effect that shortly before the accident he was driving at about 20 miles per hour with his right wheels on the gravel shoulder to obtain greater traction. He first saw the Long car when it was about 150 feet away and approaching at a speed of approximately 40 miles per hour. Some six seconds or less thereafter the front of the Long car swung in his direction. He removed his foot from the accelerator in order to reduce the speed of his car. The Long car straightened out but when 25 or 50 feet from the Landy car it suddenly swung over into the Landy lane and struck the Landy car on the left front fender with the portion of the Long car where the driver would ordinarily be sitting. The impact caused both cars to spin. The Long car again struck the Landy car, the right side of the Long car hitting the left side of the Landy car approximately where Landy was sitting. Both cars came to rest in positions almost perpendicular to their original line of travel. The Long car was across the center line of the highway and the Landy car, for a considerable portion of its length, was off the lane and shoulder in which it had been travelling.

A state trooper testified that he had discovered debris from both cars in the middle of the lane in which the Landys had been travelling.

Doris Gore, proprietress of a store located on Route 70 at a point slightly to the east of the site of the collision, testified that she heard the crash of the cars but did not see the accident. After putting on boots she assisted the Landys into her store. She went to the site of the accident and, although she could not tell exactly where the skid marks began, she described such marks as commencing somewhere in the lane in which the Longs had been travelling and ending at the rear wheels of that vehicle.

Defendant administrator argues three grounds for reversal, (1) the disability of one spouse to sue the other continues after the dissolution of the marriage by death, (2) the court erred in granting the Landy motion for a judgment of involuntary dismissal, (3) if the defendant administrator is liable, the benefits received by Mrs. Long by way of insurance and the devolution of property through the death of her husband should be set off against any judgment. Plaintiff joins in the administrator's argument that the court erred in granting the Landy motion for an involuntary dismissal.

I.

At the outset it must be recognized that the rule followed in this State is that one spouse may not sue the other in tort. *Koplik v. C. P. Trucking Corp.*, 27 *N. J.* 1 (1958) ; *Kennedy v. Camp*, 14 *N. J.* 390 (1954) ; *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 *N. J.* 372 (1954) ; *Tomkovich v. Public Service Coordinated Transp.*, 61 *N. J. Super.* 270 (*App. Div.* 1960). The rule has been widely criticized, see dissent in *Koplik v. C. P. Trucking Corp., supra*, 27 *N. J.*, at *p.* 13. Primarily this rule is bottomed upon the reasoning that the Legislature adopted the common law immunity against such interspousal suits by the adoption of *R. S.* 37:2-5, which reads:

"Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter."

At common law, one spouse was prohibited from bringing such suit upon the artificial and technical theory of the legal identity of husband and wife. 1 *Blackstone Commentaries* 442; 2 *Bl. Com.* 433. See also *Koplik v. C. P. Trucking Corp., supra; Den ex dem. Hardenbergh v. Hardenbergh,* 10 *N. J. L.* 42 (*Sup. Ct.* 1828); *Prosser on Torts,* § 101 (1955); 1 *Harper and James, Torts,* § 8.10 (1956). Additional reasons advanced for such immunity are (1) the disruptive effect upon the harmony of the family, the basic unit of organized society, see *Kennedy v. Camp, supra,* and (2) the possibility of fraudulent and collusive litigation against the frequent real party in interest—the insurance carrier. See dissent, *Koplik v. C. P. Trucking Corp., supra,* 27 *N. J.,* at *p.* 15. It cannot be disputed that had the husband survived the plaintiff would have been prohibited from bringing suit against him. *Koplik v. C. P. Trucking Corp., supra.*

The negligent infliction of injury by a husband upon his wife is a wrongful act. *Eule v. Eule Motor Sales,* 34 *N. J.* 537 (1961). It does not lose this quality merely because the wife is prohibited by the common law doctrine from enforcing liability for her damage. *R. S.* 37:2–5 serves solely to incapacitate or disable a wife from suing her tortfeasor mate during the existence of the reasons which underlie the common law doctrine. The statute merely immunizes the husband from suit by his mate for negligent conduct. *Koplik v. C. P. Trucking Corp., supra,* 27 *N. J.,* at *p.* 7; *Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (*E. & A.* 1939); *Johnson v. Peoples First National Bank & Trust Co.,* 394 *Pa.* 116, 145 *A.* 2d 716 (*Sup. Ct.* 1958).

"The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the time have

not so changed as to make further application of it the instrument of injustice." *State v. Culver*, 23 *N. J.* 495, 505 (1957). When the policy behind a rule no longer exists the rule should disappear. *Johnson v. Peoples First National Bank & Trust Co., supra.*

Research has disclosed that the prime issue here involved has been directly passed upon by only one sister state, namely, Pennsylvania. *Johnson v. Peoples First National Bank & Trust Co., supra.* The court there held that a widow could maintain an action in trespass against her deceased husband's personal representative for injuries inflicted upon her through the husband's negligent operation of an automobile in which she was a passenger. The court concluded that neither public policy nor statutory proscription precluded such a justiciable cause of action, both reasons for the prohibition having been negated.

The concept of the unity of husband and wife is terminated upon the death of either spouse and the common law reason for the interdiction against interspousal suits based upon such unity no longer exists when the marriage has been so dissolved by the death of either party.

We recognize that a wife is precluded not only from suing her husband *ex contractu* at law during his lifetime, but as well from so suing his estate. *Gould v. Gould,* 35 *N. J. Eq.* 37 (*Ch.* 1882), affirmed 35 *N. J. Eq.* 562 (*E. & A.* 1882); *Wood v. Chetwood,* 44 *N. J. Eq.* 64 (*Ch.* 1888), affirmed 45 *N. J. Eq.* 369 (*E. & A.* 1889); *Ward v. McLellan,* 117 *N. J. Eq.* 475 (*E. & A.* 1934); *Freitag v. Bersano,* 123 *N. J. Eq.* 515 (*Ch.* 1938). The reason for this rule rests upon *R. S.* 37:2–5, which incorporates the common law disability of a wife to enter into a contract with her spouse into our statutory system. *R. S.* 37:2–5, as far as here pertinent, reads: "Nothing in this chapter contained shall enable a husband or wife to contract with * * * each other, except as heretofore, * * *." In *Wood v. Chetwood, supra,* the Chancery Court said, 44 *N. J. Eq.,* at *p.* 66:

"If a right of action exists in the complainant, it would seem to be unquestionable that this court has exclusive original jurisdiction over it. The foundation of the action is a contract made by a husband with his wife. To entitle the complainant to recover, a contract, either express or implied, must be shown to have existed between the husband and his wife. Contracts between persons holding this relation to each other still stand on their ancient footing—void at law, but good in equity, if fair and fairly obtained. The statutes giving married women the same dominion over their property that they might exercise if they were single expressly declare: 'Nor shall anything herein enable a husband or wife to contract with or to sue each other except as heretofore.' *Revision* [p.] 639 § 14. Courts of equity alone can give a remedy on a contract made between a husband and his wife, whether redress is sought by one of the original parties against the other, or by or against the legal representative of one or both of the original parties."

Such contracts continue to be void at law and unenforceable in the Law Division, but enforceable as contracts *sub modo* in the Chancery Division. See dissent of Justice Ackerson in *Bendler v. Bendler,* 3 *N. J.* 161, 183 (1949). It is seen, therefore, that this restriction against *post mortem* interspousal contract suits at law is grounded upon the common law invalidity of *such contracts* and not upon the prohibition against *interspousal* suits.

The law courts, *ante* 1948, when the judicial article of our present Constitution became effective, were without power to apply equitable principles and hence powerless to grant that type of relief which could be obtained solely in the Chancery Court. Although such actions must yet be tried in the Chancery Division, if by inadvertence one were instituted in the Law Division our present practice would prevent a dismissal. The matter would simply be transferred to the Chancery Division. *R. R.* 1:27D. The common law rule as to *post mortem* interspousal actions *ex contractu* is not apposite.

On the other hand, the question whether an interspousal action in tort could be maintained after the husband's death did not arise at common law because of the general doctrine that tort actions did not survive the death of the tortfeasor or the victim. See *Friedman v. Greenberg,* 110

*N. J. L.* 462 *(E. & A.* 1933) ; *Ten Eyck v. Runk,* 31 *N. J. L.* 428 *(Sup. Ct.* 1866). With the passage of Laws of New Jersey, 1833, *p.* 88, "A supplement to the act entitled, 'An act to prevent, in certain cases, the abatement of suits and reversal of judgments,' " now *N. J. S. A.* 2A:15–4, the general common law bar against *post mortem* suits was eliminated. It follows that the statute providing that an action in tort survives the death of the tortfeasor applies to spouses as well as others not so related. Thus a surviving spouse may sue the estate of her deceased husband for a tort committed during his lifetime.

The marital status which has been dissolved by death cannot be deleteriously affected by an interspousal action. The public policy which seeks to prevent disharmony in the home has no further factual basis, there being no matrimonial harmony to protect.

The danger of fraud where the deceased defendant spouse is insured has been reduced to such an extent that it cannot be said to exist to any greater degree than in an ordinary negligence action between unrelated parties. It is self-evident that the ground for the special fear of collusion between spouses is eliminated upon the death of the tortfeasor.

We hold, therefore, that there is no bar to an action in tort by a widow against her deceased husband's estate. The trial court did not err in denying the administrator's several motions bottomed upon the marital relation.

## II.

Plaintiff and the administrator argue that in the light of all of the facts presented and the inconsistencies in the testimony of the Landys there arose a factual question as to Landy's negligence which should have been submitted to the jury.

It is axiomatic that a court may not weigh the evidence on a motion for involuntary dismissal, but must accept as true all of the evidence which supports the party

against whom the motion is made and give him the benefit of all legitimate inferences which might be drawn therefrom in his favor. *Shellhammer v. Lehigh Valley R. R. Co.,* 14 *N. J.* 341, 345 (1954). The power of the trial judge to grant such a motion is not, however, restricted to an utter absence of all contradictory evidence. In *Hansen v. Eagle-Picher Lead Co.,* 8 *N. J.* 133, at *p.* 141 (1951), the court said:

"It is well settled that the existence of a possibility of a defendant's responsibility for a plaintiff's injuries is insufficient to impose liability. 'In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would *exclude* the idea that it was due to a cause with which the defendant was unconnected. While proof of certainty is not required, the evidence must be such as to justify the inference of probability as distinguished from the mere possibility of negligence on the part of the defendant.' "

The mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an incident of negligence. Negligence is a fact which must be shown and which will not be presumed. The burden of proving the charge of negligence is upon the plaintiff and must be sustained by proof of circumstances from which defendant's want of due care is a legitimate inference. *Hansen v. Eagle-Picher Lead Co., supra.* The "mere *scintilla* of evidence rule" does not prevail in New Jersey. *Shellhammer v. Lehigh Valley R. R. Co., supra, Layton v. Healy,* 12 *N. J. Super.* 459 (*App. Div.* 1951). An inference can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess. *Rivera v. Columbus Cadet Corps of America,* 59 *N. J. Super.* 445 (*App. Div.* 1960), certification denied 32 *N. J.* 349 (1960).

A reading of their testimony *in toto* fails to reveal any material inconsistencies in the Landy testimony. Such contradictions as do appear are inconsequential and natural.

Indeed, it would be strange if there were not some discrepancies in the recital of the facts by the witnesses. *Mijon v. Acquaire*, 51 *N. J. Super*. 426 (*App. Div*. 1958), certification denied 28 *N. J*. 146 (1958).

Accepting as true all of the evidence which supports the view of the appellants against whom the motion was made and giving them the benefit of all legitimate inferences which might be drawn therefrom in their favor, the evidence fails to justify any inference of the probability of negligence on the part of Landy. The trial court was therefore justified in granting the motion of dismissal as to the Landys.

### III.

The administrator argues that the court erred in refusing to charge that any money received by Mrs. Long "in payment of her doctor bills, hospital bills or other medical expenses as a result of any prior arrangements by her late husband, in the shape of insurance or otherwise" must be deducted from any verdict, and in denying a motion made subsequent to the verdict to have the court reconsider the above request and to deduct from the verdict as rendered the proceeds of various insurance policies for the above purposes, and the value of assets which devolved upon her by reason of her husband's death. These items were (1) monies received from her husband's insurance carrier for medical and hospital expenses; (2) monies received from Blue Cross for hospital expenses; (3) monies received from her husband's insurance carrier for his accidental death; (4) shares of stock, the title to which devolved upon plaintiff by virtue of title having been in their joint names with the right of survivorship; (5) monies from the husband's estate in a comparatively nominal amount.

The administrator admits that ordinarily a tortfeasor may not set up in mitigation of damages payments made to injured persons from collateral sources. *Cornish v. North Jersey St. Ry. Co.*, 73 *N. J. L*. 273 (*Sup. Ct*. 1906);

*Skillen v. Eagle Motor Co.,* 107 *N. J. L.* 211 (*Sup. Ct.* 1930); *Rusk v. Jeffries,* 110 *N. J. L.* 307 (*E. & A.* 1932). He seeks, however, to distinguish the case *sub judice* from the general rule, by reason of the fact that the premiums for the policies under which the payments were here made to plaintiff were paid by defendant. There is no direct proof of the source of payments of these premiums. In any event, we see no reason to deviate from the general rule insofar as the payments for medical and hospital expenses are concerned merely because the husband paid the premiums. This does not affect the common law rule that a tortfeasor may not benefit by payments to the injured party from collateral sources. Plaintiff was the direct contractual beneficiary of these policies which vested her with a property right. *Cf. Metropolitan Life Insurance Co. v. Dinzik,* 141 *N. J. Eq.* 336 (*Ch.* 1948). Furthermore, the payment of the death benefits arising upon the husband's decease, the vesting of the jointly owned stock in plaintiff upon the death of the husband, and the inheritance through the estate of the husband, cannot be considered compensation for the injuries inflicted upon plaintiff through the wrongful act of her husband. The contractual right is separate and distinct from any right she may have to recovery for the *quantum* of damages sustained by her from the independent tortious act of her husband. The two should not be confused. No rule of law or equity comes to mind which would permit such an offset as the administrator seeks. The court did not err either in its refusal to charge as requested or in its refusal to grant the administrator's motion for an offset.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.