NATHAN HEYMAN, ADMINISTRATOR AND ADMINISTRA-
TOR *AD PROSEQUENDUM* OF THE ESTATE OF NETTIE
GORDON, DECEASED, PLAINTIFF-APPELLANT, v.
HARRY GORDON, DEFENDANT-RESPONDENT, AND
CHARLES SCHNEBER, DEFENDANT.

Argued March 5, 1963—Decided May 6, 1963.

*Mr. Marvin N. Rimm* argued the cause for plaintiff-appel-
lant (*Messrs. Finn and Rimm,* attorneys; *Mr. Rimm,* of
counsel).

*Mr. Augustine A. Repetto* argued the cause for defendant-respondent (*Messrs. Bolte and Repetto,* attorneys; *Mr. Repetto,* of counsel).

The opinion of the court was delivered by

HALL, J. This litigation involves another aspect of intrafamily tort actions. May a wrongful death action for the sole benefit of an unemancipated minor child be maintained against the father grounded on the latter's alleged negligence which resulted in the death of the wife and mother?

The death occurred from an automobile collision between cars driven by defendants Gordon and Schneber. Mrs. Gordon, the decedent was a passenger in her husband's car along with their son Stanley. The son was 13 years of age at the time, unemancipated and solely dependent upon his father for his support. The plaintiff, a stranger, was appointed general administrator and administrator *ad prosequendum* of the wife's estate. He instituted this action against Gordon and Schneber, which included a claim against Gordon for damages resulting from wrongful death. *N. J. S.* 2A:31–1, *et seq.* The complaint alleged that Mr. Gordon was not dependent on his wife at the time of her death and that the death claim was asserted solely for the benefit of the son. Gordon carried liability insurance; Schneber was an uninsured motorist.

Gordon, through his insurance carrier of course, moved for summary judgment as to the death claim against him. The Law Division granted the motion and plaintiff's appeal to the Appellate Division was certified on our own motion.[1]

The trial court gave two reasons for its decision. First, it said that the wrongful death statute permits an action thereunder only "[w]hen the death of a person is caused

---

[1] While claims remained after the granting of the motion and the trial court did not expressly direct the entry of final judgment on the dismissed claim, and determine that there was no just reason for delay, *R. R.* 4:55–2, so that this phase of the case is technically not appealable at this stage, defendant does not press the point and we treat the matter as if the judgment did contain the requisite recitals.

by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury  *  *  *," *N. J. S.* 2A:31–1, and that, under the law in New Jersey, Mrs. Gordon could not have sued her husband if she had survived. Second, the substance of the action is a claim for damages for the benefit of an unemancipated child against his parent, likewise barred by the decisional law of this State.

While our wrongful death statute creates a cause of action which did not exist at common law because a tort claim did not survive the death of the injured party, the statutory claim still has to rest upon the same *sine qua non* as if death had not resulted, *i. e.,* "a wrongful act, neglect or default" of the defendant. The theory and measure of damages, and so the beneficiaries, constitute the fundamental distinction. Our law is settled that one spouse may not sue the other for injuries negligently inflicted, at law or in equity, for reasons of policy primarily based on the family relationship. *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1 (1958). Where the policy reason has disappeared, as for example because of the death of the defendant spouse, the reason for the bar is gone and the action is permitted against the latter's estate. *Long v. Landy,* 35 *N. J.* 44 (1961). In the instant case, however, this basic consideration still exists despite the death of the injured spouse, since the only beneficiary is still within the family relationship giving rise to this reason for the bar. Stripping the situation of formalities, which should not be allowed to disguise it, the real and only party in interest is the son. He seeks to collect money from his father on the ground that the latter negligently caused the death of his mother. We see no essential difference between this state of fact and that where an unemancipated child sues his parent for his own injuries, negligently caused. That such a cause of action may not be prosecuted in New Jersey even where the parent is insured, was decided by *Haslings v. Haslings,* 33 *N. J.* 247 (1960). The policy reasons there relied upon are equally controlling here.

We need not pass upon the first ground relied upon by the trial court, *i. e.,* by reason of the requirement of *N. J. S.* 2A:31–1, no action for wrongful death will lie because the decedent could not have maintained a suit against her husband if death had not ensued. In states like New Jersey where the statute creates a new cause of action rather than having the effect of survival, the authorities are divided as to whether this requisite pertains only to elements inhering in the tort itself or extends to personal disabilities and immunities as well. See cases collected in Annot. 28 *A. L. R.* 2d 662 (1953); *Prosser, Torts,* § 105, *pp.* 716–717 (2d ed. 1955); 2 *Harper and James, The Law of Torts,* § 24.5 (1956). As the New Hampshire court said in *Levlock v. Spanos,* 101 *N. H.* 22, 131 *A.* 2d 319, 321 (*Sup. Ct.* 1957), most courts have held that immunities during life do bar a death action. The point apparently has never been decided by an appellate court in this State. A trial court decision some years ago squarely held as did the Law Division here. *Damiano v. Damiano,* 6 *N. J. Misc.* 849, 143 *A.* 3 (*Cir. Ct.* 1928). *Long v. Landy, supra* (35 *N. J.* 44) did not present the issue since there the action was not under the death act but by the surviving spouse against the estate of her deceased husband.

We have carefully considered all the arguments for reversal urged by plaintiff but find none of them persuasive in view of the policy reasons set forth above. We appreciate, of course, that some other jurisdictions have reached an opposite result, but we are convinced they have done so by reason of different approaches to their death acts or a dissimilar point of view with regard to intra-family negligence actions.

Affirmed.

JACOBS, J. (dissenting). The intra-family immunities from tort responsibility have been condemned in academic discussions and in judicial opinions elsewhere; detailed reference to those discussions and opinions may be found in the dissents to *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1,

13–22 (1958), and *Hastings v. Hastings,* 33 *N. J.* 247, 253–261 (1960). More recent attacks on the immunities are contained in *Klein v. Klein,* 58 *Cal.* 2d 692, 26 *Cal. Rptr.* 102, 376 *P.* 2d 70 (1962); *Cramer v. Cramer,* 379 *P.* 2d 95 (*Alaska Sup. Ct.* 1963); *Trevarton v. Trevarton,* 378 *P.* 2d 640 (*Colo. Sup. Ct.* 1963); 34 *Notre Dame Law.* 145 (1958), reprinted in 82 *NJLJ* 29 (1959); 27 *Fordham L. Rev.* 422 (1958), reprinted in 82 *NJLJ* 48 (1959); 60 *W. Va. L. Rev.* 294 (1958); 10 *Ala. L. Rev.* 453 (1958); 14 *U. Miami L. Rev.* 99 (1959); 35 *Tul. L. Rev.* 272 (1960); 1960 *Wash. U. L. Q.* 171; 9 *Clev.-Mar. L. Rev.* 265 (1960); 34 *Temp. L. Q.* 186 (1961); 47 *Va. L. Rev.* 1450 (1961); 105 *Sol. J.* 192 (1961); 23 *Ohio St. L. J.* 339 (1962). See Fuld, J., dissenting in *Badigian v. Badigian,* 9 *N. Y.* 2d 472, 474, 215 *N. Y. S.* 2d 35, 174 *N. E.* 2d 718, 720 (1961). In commenting on *Koplik,* the *Notre Dame Lawyer* points out that it simply effected "a windfall for liability insurance companies" and added little "to the attempt to equate law with justice"; and in commenting on *Hastings,* the *Temple Law Quarterly* notes that under no realistic view is there any current justification for invoking the immunities in the ordinary automobile accident case against a fully insured motorist.

In *Long v. Landy,* 35 *N. J.* 44 (1961), a motorist's carelessness caused an accident which resulted in his death and injury to his wife. She sued the administrator of his estate and obtained a verdict. On appeal it was urged that the interspousal immunity prohibited her from maintaining her action but this contention was readily rejected by a unanimous court. In the course of his opinion, Justice Haneman points out that "the negligent infliction of injury by a husband upon his wife is a wrongful act"; that it does not lose this quality merely because the wife is precluded by the immunity from maintaining her action; that the common law reason for the immunity, based on the concept of the unity of husband and wife, no longer exists when the marriage is "dissolved by the death of either party"; that the marital status thus dissolved "cannot be deleteriously affected

by an interspousal action"; and that "the public policy which seeks to prevent disharmony in the home has no further factual basis, there being no matrimonial harmony to protect." See 35 *N. J.*, at *pp.* 50, 51, 53. Dealing with *N. J. S.* 2A:15–4, Justice Haneman held that the statute, in providing that an action in tort survives the death of the tortfeasor, "applies to spouses as well as others not so related." He found no difficulty with the terms of the statutory provision that the plaintiff could bring such action against the administrator as she might have "maintained against the testator or intestate," and he quite properly refused to import the common law immunity into the general statutory language. See *Welch v. Davis,* 410 *Ill.* 130, 101 *N. E. 2d* 547, 28 *A. L. R. 2d* 656 (1951); *Shumway v. Nelson,* 259 *Minn.* 319, 107 *N. W. 2d* 531 (1961).

In *Welch v. Davis, supra,* Justice Schaefer had occasion to consider whether the interspousal immunity was applicable in a suit under the wrongful death act of Illinois. He held that it was not, stating that "whatever may be the present vitality of that immunity in other contexts, no reason exists for reading it into the Wrongful Death Act to bar recovery in this case." See *Nudd v. Matsoukas,* 7 *Ill. 2d* 608, 131 *N. E. 2d* 525 (1956). The Illinois statute contains language substantially identical with New Jersey's wrongful death act. See *N. J. S.* 2A:31–1. In *Shumway v. Nelson, supra,* the husband negligently drove his car, causing an accident which resulted in his death and the death of his wife. The only heir was a minor daughter. The plaintiff, as statutory trustee, sued the husband's estate and the issue presented to the Minnesota Supreme Court was whether the interspousal immunity, which still prevailed in Minnesota, was applicable. The court, through Chief Justice Dell, held that it was not, saying:

"Our death-by-wrongful act statute provides (Minn. St. 573.02, subd. 1):
'When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision

2 may maintain an action therefor *if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. \* \* \*'* (Italics supplied)

Defendant argues that if the plaintiff's decedent could not have brought the action in her lifetime, the conditional clause of the statute likewise prohibits the trustee from maintaining the action. We cannot agree that such a narrow construction is consistent with the legislative intent. The statute is remedial in character and thus requires a liberal construction. \* \* \* this clause refers to the facts and circumstances giving rise to the cause of action, as well as any facts or circumstances pertaining to any permissible defenses such as contributory negligence, rather than to the person by whom the action could be maintained." 107 *N. W. 2d*, at *p.* 533.

Courts in other jurisdictions which still adhered to the immunity declined to apply it in suits under wrongful death acts comparable to New Jersey's act. See *Shiver v. Sessions,* 80 *So. 2d* 905 (*Fla.* 1955); *Russell v. Cox,* 65 *Idaho* 534, 148 *P. 2d* 221 (1944); *Deposit Guaranty Bank & Trust Co. v. Nelson,* 212 *Miss.* 335, 54 *So. 2d* 476 (1951); *Kaczorowski v. Kalkosinski,* 321 *Pa.* 438, 184 *Atl.* 663, 104 *A. L. R.* 1267 (1936); *Rodney v. Staman,* 371 *Pa.* 1, 89 *A. 2d* 313, 32 *A. L. R. 2d* 976 (1952) (applying the Ohio Death Act); *Johnson v. Ottomeier,* 45 *Wash. 2d* 419, 275 *P. 2d* 723 (1954). *Cf. Harlan National Bank v. Gross,* 346 *S. W. 2d* 482 (*Ky.* 1961); *Oliveria v. Oliveria,* 305 *Mass.* 297, 25 *N. E. 2d* 766 (1940). See also 26 *Mo. L. Rev.* 152, 171 (1961) where the author states that:

"If the particular statute under which the suit is brought is construed as one which creates a new cause of action in someone other than the deceased, then it would seem that the personal immunity the tortfeasor would have had in a suit brought by the spouse had she survived is irrelevant and that the third party in whom the action is vested may successfully sue the tortfeasor. This is in fact the position taken by the cases."

New Jersey's wrongful death act creates a new cause of action maintainable by an administrator *ad prosequendum* for the benefit of the decedent's dependents. See *N. J. S.* 2A:31–1 to *N. J. S.* 2A:31–6, inclusive. It is remedial in nature and is "to be liberally construed and applied to effec-

tuate its beneficent object." *Turon v. J. & L. Construction Co.*, 8 *N. J.* 543, 558 (1952) ; *Hartman v. City of Brigantine*, 42 *N. J. Super.* 247, 255 (*App. Div.* 1956), aff'd 23 *N. J.* 530 (1957). While its general terminology incorporates the familiar tort concepts such as negligence, contributory negligence and causation, the very breadth of the legislative purpose in creating the new cause of action negates any suggestion of intent to incorporate the highly restrictive "personal immunities from liability which the common law developed." See *Welch v. Davis, supra*, 101 *N. E. 2d*, at p. 548, 28 *A. L. R. 2d*, at p. 658.

As *Long v. Landy, supra*, indicates, the interspousal immunity has no application here since the wife is deceased, and as the holdings in the cases which have refused to import the common law immunities into their wrongful death acts indicate, the infant beneficiary's status is immaterial since he was not involved in the origins of the cause of action nor was he the subject of the defendant's alleged wrongful act, and he is not a party to the legal proceeding nor is he actively participating in its maintenance. Indeed, the New Jersey courts have gone far beyond anything suggested here in confining their attention in wrongful death actions strictly to the parties involved in the origins of the cause of action; thus they have consistently held that, though contributory negligence of the decedent may be a bar, contributory negligence of the beneficiary is immaterial. See *Consolidated Traction Co. v. Hone*, 59 *N. J. L.* 275 (*Sup. Ct.* 1896), reversed on other grounds, 60 *N. J. L.* 444 (*E. & A.* 1897) ; *Van Clik v. Hackensack Water Co.*, 2 *N. J. Misc.* 1140, 1143, 126 *A.* 634 (*Sup. Ct.* 1924) ; *Bastedo v. Frailey*, 109 *N. J. L.* 390 (*E. & A.* 1932) ; *Cloyes v. Delaware Tp.*, 41 *N. J. Super.* 27, 37 (*App. Div.* 1956), aff'd 23 *N. J.* 324, 336 (1957) ; but *cf.* Annot., 2 *A. L. R. 2d* 785, 786 (1948). See also *Halecki v. United New York & New Jersey Sandy Hook Pilots Ass'n*, 251 *F. 2d* 708 (2 *Cir.* 1958), reversed 358 *U. S.* 613, 79 *S. Ct.* 517, 3 *L. Ed. 2d* 541 (1959).

Legal doctrines should rest on reality rather than fiction and should always be molded and applied with justice uppermost in mind. Here an unjust result is being reached, not because of any legislative or precedential compulsion, but because of a notion that the familial relationship might somehow or other be impaired because the beneficiary is a minor child of the defendant. It seems inconceivable that any such impairment could flow from this type of automobile accident case in which a stranger prosecutes as the legally designated representative of the estate of the deceased wife, and the husband defends through his insurance carrier which will be liable for any ensuing judgment. I vote to reverse.

THE CHIEF JUSTICE and Justice SCHETTINO join this dissent.

*For affirmance*—Justices FRANCIS, PROCTOR, HALL and HANEMAN—4.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS and SCHETTINO—3.