95 N.J. Super. 298 (1967)
230 A.2d 902
MARGARET THARP, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARGARET M. SHANNON, PLAINTIFF,
v.
FRANK M. SHANNON AND MARIO C. MALATESTA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 26, 1967.
*299 Mr. Charles E. Starkey for plaintiff (Messrs. Starkey & Turnbach, attorneys).
Mr. Robert E. Combs for defendant Frank M. Shannon (Messrs. Haines, Schuman & Butz, attorneys).
*300 MUCCIFORI, J.C.C. (temporarily assigned).
This litigation, presently before the court on defendant's motion for summary judgment, concerns the controversial problem of intrafamily tort actions as applied to suits commenced under the Survivor's Act, N.J.S. 2A:15-3 and the Wrongful Death Act, N.J.S. 2A:31-1. There is no recorded appellate decision in New Jersey which deals with the precise legal questions presented by the motion.
The factual allegations in the complaint pertinent to the decision of this motion are as follows:
On May 6, 1964 defendant Frank Shannon operated an automobile along Route 70 in Manchester Township, Ocean County, New Jersey. His wife Margaret was a passenger. The complaint alleges that as a result of defendant's negligence a collision occurred in which Mrs. Shannon sustained serious injuries from which she subsequently died. Margaret Tharp, decedent's daughter and administratrix ad prosequendum, instituted this suit for the benefit of herself and decedent's son Frank. At the time of the accident decedent was living with her husband and their 17-year-old son in Brick Town, New Jersey. Margaret Tharp did not live with her parents but resided with her husband and her two children. The papers on file indicate that in May 1964 Frank Shannon was an unemancipated minor depending upon his parents for his sole means of support. This fact was not refuted by plaintiff at the hearing and we must, therefore, accept it as an uncontroverted fact.
The complaint is also directed against one Mario E. Malatesta, driver of the vehicle which came into collision with defendant's vehicle, but we are not here concerned with that aspect of the litigation. There appears to be a technical deficiency in the complaint in that the general administrator has not sued under N.J.S. 2A:15-3. The court, however, will deal with the case as if it had been properly instituted since the technical deficiency could be cured by a motion to amend.
In his brief and at oral argument, defendant contended that (1) the interspousal immunity doctrine precludes the *301 maintenance of this suit under both the Survivor's Act and the Wrongful Death Act; (2) no suit could be maintained for the benefit of the decedent's son because of the intrafamily immunity doctrine, which precludes suits by an unemancipated child against a parent for a tort, and (3) the daughter's claim for dependency was so insignificant as to be incapable of supporting a claim. Reasoning beyond this point, the defendant argued that since the statute, N.J.S. 2A:31-4, gives any recovery to a dependent to the exclusion of all others, the daughter could not recover since her brother was a dependent, even though he was incapable of recovering damages by reason of the intrafamily immunity doctrine. Because of the view taken by the court on the first two arguments presented, it is unnecessary to discuss the defendant's third point.
The recent cases of Long v. Landy, 35 N.J. 44 (1961), and Heyman v. Gordon, 40 N.J. 52 (1963), although not deciding the precise legal issues presented, have been instrumental in framing the court's disposition of the motion. Though there has been disagreement and voluminous academic treatment and discussion on the view presently taken by our courts with regard to intrafamily immunities, the court has followed the majority opinion as reflected in Hastings v. Hastings, 33 N.J. 247 (1960), and Heyman v. Gordon, supra, and the authorities cited therein, to dispose of the issues presented.
Plaintiff, in opposing the motion, suggested that the Supreme Court may change its majority view if a change in the personnel of the court is effected. However, it is not the prerogative of this court to speculate as to the effect of a change of attitude in that court or attempt to second guess in which direction the court might lean in the future. This court must adhere strictly to the principles of stare decisis and give the same degree of deference to the Supreme Court decisions as does our Appellate Division.
*302 "Respondents' contentions run full-square into the decision of the Court of Errors and Appeals in Teets v. Hahn (supra, 104 N.J.L. 357), and we are bound by the opinion of our State's then highest court. As judges of the Appellate Division it is our conception that our duty is encompassed by the obligation to decide what is the law to be applied to a given case on appeal and not what we feel the law should be." Nixon v. Lawhon, 32 N.J. Super. 351 (App. Div. 1954) (citations omitted)

I
Defendant contends that the language of both the Survivor's Act and the Wrongful Death Act precludes a representative of decedent from suing under circumstances where decedent could not have sued the tortfeasor had she lived. The court is presently disposed to accept that view. The statutory language relied upon by defendant is italicized below:

N.J.S. 2A:15-3
"Actions which survive, torts to decedent
Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser and recover their damages as their testator or intestate would have had if he was living."

N.J.S. 2A:31-1
"When action lies
When the death of a person is caused by a wrongful act, neglect or default, such as would if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime."

N.J.S.A. 37:2-5
"Right of husband and wife to contract with or sue each other
Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter."
*303 The case of Long v. Landy, supra, relied upon by plaintiff, did not decide the precise question involved in this suit. Landy was decided under different statutory authority, namely, N.J.S. 2A:15-4, and was instituted by a surviving spouse against the deceased tortfeasor spouse. A similar factual situation between a child and a deceased parent was decided in Palcsey v. Tepper, 71 N.J. Super. 294 (Law Div. 1962). Justice Hall in Heyman v. Gordon, supra, made particular note of the fact that the Landy case did not present the same issue as was decided by the court in Heyman. A careful reading of the opinion in Landy indicates that the court expressly intended to limit its rationale to particular instances, i.e., where suit was instituted against a deceased tortfeasor spouse. "It is self-evident that the ground for the special fear of collusion between spouses is eliminated upon the death of the tortfeasor." Long v. Landy, supra, at p. 53. This view was originally expressed in Palcsey v. Tepper, supra, wherein the court gave recognition to the rationale adopted by our sister state of Pennsylvania in the case of Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (Sup. Ct. 1957):
"It is obvious that the Pennsylvania Supreme Court makes a sharp distinction between a suit against a living parent and one against the estate of a deceased parent, denying the first and permitting the latter." (71 N.J. Super., at pp. 297-298)
In Heyman v. Gordon, supra, the Supreme Court undertook review of the propriety of the trial court's grant of a motion for summary judgment which decided that a suit brought under the Wrongful Death Act by an administrator against a surviving tortfeasor spouse could not be maintained because the spouse could not have maintained the action had she lived. The second ground upon which the trial court relied was that the substance of the action was a claim for damages on behalf of an unemancipated child. The Supreme Court, in affirming the trial court's action, chose to rely upon the latter ground. However, in discussing the first the majority of the Supreme Court clearly indicated their approval *304 of the reasoning adopted by the trial court with respect thereto. The court referred to Damiano v. Damiano, 6 N.J. Misc. 849 (Cir. Ct. 1928), which squarely met the issue presented here, finding in favor of defendant. Furthermore, the Heyman court cited with apparent approval the case of Levlock v. Spanos, 101 N.H. 22, 131 A.2d 319 (Sup. Ct. 1957), which held that lifetime immunities bar the death action. This court is satisfied that Long v. Landy should be applied only in situations where the tortfeasor spouse is deceased.
The language of the statutes clearly indicates that to enable the administratrix or administratrix ad prosequendum to recover under the respective statutes, decedent must have been able to recover damages had she lived. Both statutes are derivative in nature and depend upon the same sine qua non, decedent's right to recover had she lived. If decedent could not recover against the tortfeasor had she lived, then that disability bars recovery by her representative after her demise, at least under circumstances where the tortfeasor spouse survives. If the rule is otherwise, the trial courts must await a decision by our Supreme Court clearly indicating either that the statutes should be construed so as not to bar the action, or that the policy reasons no longer exist where suit is maintained against a surviving tortfeasor spouse, or they must await a legislative review of the present statutory language and its alteration. Something of the legislative intent in enacting the statutes can be gleaned from the fact that the immunities have been enforced for a long period of time in a situation such as presented here and the Legislature has not seen fit to alter the statutes by amendment.

II
Technically, this suit was instituted by the administratrix ad prosequendum against the decedent's surviving spouse and not by the son against his father. Plaintiff has attempted to capitalize on this distinction to preclude any application of the disabilities prohibiting a suit by a child against his parent. *305 However, the court in Heyman v. Gordon, supra, recognized this problem and made the following comments:
"Stripping the situation of formalities, which should not be allowed to disguise it, the real and only party in interest is the son. He seeks to collect money from his father on the ground that the latter negligently caused the death of his mother. We see no essential difference between this state of fact and that where an unemancipated child sues his parent for his own injuries, negligently caused." (40 N.J., at p. 54)
The second issue, as to whether the action can be maintained on behalf of the unemancipated child against a living parent for a tort causing injury to such child, was conclusively decided by our Supreme Court in Heyman in favor of defendant. However, plaintiffs there, both in their brief and at oral argument, urged the court to apply the rationale of the recently decided case of Sanchez v. Olivarez, 94 N.J. Super. 61 (Law Div. 1967), to permit the action on behalf of the child. The court in Sanchez had concluded that where the marital relationship is terminated by divorce, one spouse could maintain a suit against the other spouse for a tort committed during coverture. It reasoned that the statutory disability which existed during coverture because of N.J.S.A. 37:2-5 was extinguished by the divorce decree. From that holding plaintiff here contends that the right to bring the cause of action must be determined as of the time it was instituted and not from the day the tort was committed.
This court finds sufficient contrary authority in cases decided by the Court of Errors and Appeals and the Supreme Court which leads it to believe that the rule adopted in Sanchez should not be applied to a situation involving a parent and child. The leading case in New Jersey involving suits by unemancipated infants against their parents for a tort is Reingold v. Reingold, 115 N.J.L. 532 (E. & A. 1935). The court there held that a suit could not be brought by an emancipated child against his tortfeasor parent for an injury received during infancy. The opinion concerned itself with the policy reasons, which persist to this day, for prohibiting *306 the suit where the possibility of fraud and collusion and the disruption of harmonious family relationship is extant. The court reasoned that if the rule were otherwise it would create a situation where children would sever their family ties upon the "advice of a next friend" to secure the benefit of a "mere mess of pottage or a few pieces of silver":
"The same reasons and logic which impel the denial of the right of an unemancipated infant to sue parents when the suit is brought for injuries sustained during such infancy likewise impels us to deny the right of a cause of action when the suit is brought by a child, after majority and emancipation, for actionable negligence of parents which occurred during the unemancipated infancy of the child. The right of action, if any, is determined as of the day of the accident. If either did or did not exist as of that day. And if not, the majority and emancipation of the child could not, and did not, create a non-existent cause of action." (at p. 537)
Therein lies the essential difference between the husband-wife situation and the parent-child. Needless to say, a divorce is an unexpected event, and the relationship of husband and wife requires judicial sanction before it may be dissolved. In the parent-child situation the law anticipates that at some moment in time the association will be terminated. However, the underlying ties nurtured by love, affection and respect continue. Plaintiff's view would actively promote disruption of the family and allow the development of circumstances where the seeds of fraud and collusion could germinate freely.
In Hastings v. Hastings, supra, Justice Hall persuasively argued in support of continuing the rule prohibiting children from suing their parents for torts:
"The possibility of collusion, and the corollary of break down of most desirable individual integrity within the family frequently involving children as well, is so great in so many cases of the kind before us that we feel constrained to conclude in conjunction with the other considerations previously mentioned that sound public policy precludes their prosecution." (33 N.J., at p. 253)
See also Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (Sup. Ct. 1957).
*307 This court is persuaded that Sanchez v. Olivarez, supra, does not alter the rule adhered to in Reingold v. Reingold, Hastings v. Hastings and Heyman v. Gordon, supra. The policy reasons deemed controlling in the cited cases compels this court to reject plaintiff's argument.
For the foregoing reasons, summary judgment is hereby granted in favor of defendant Frank Shannon and the complaint dismissed as to him.