**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3001-23

JOSEPH APUZZO, CPA,
Executor of the ESTATE
OF LEONARD SKLAIR,

      Plaintiff-Appellant,

v.

ZORAN ZOVKO, SVETLANA
ZOVKO, DOUBLE Z
ENTERPRISES, INC., and
PATRICK M. NERNEY, ESQ.,

      Defendants-Respondents.

_____

Submitted September 15, 2025 – Decided October 28, 2025

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0432-20.

Scarinci & Hollenbeck, LLC, attorneys for appellant (Joel N. Kreizman, on the brief).

Philip R. Kaufman, attorney for respondents Zoran Zovko, Svetlana Zovko and Double Z Enterprises, Inc.

PER CURIAM

Plaintiff Estate of Leonard Sklair ("Estate") appeals from a Law Division judgment after a bench trial dismissing its claims of legal malpractice against Defendant Patrick M. Nerney, Esq. and denying its subsequent motion for reconsideration. Because we conclude the trial court misapplied its discretion by its sua sponte invocation of the doctrine of avoidable consequences and further erred in its application of the doctrine, we reverse the judgment dismissing the complaint against Nerney only. We remand the matter to the trial court to enter judgment against Nerney. On remand the court shall determine the proper amount of damages to compensate plaintiff for Nerney's negligence and shall also address any crossclaims between codefendants.

I.

The salient facts are substantially undisputed. Leonard Sklair, before his death in 2019, made a series of loans totaling $1,107,000 to Zoran Zovko, Svetlana Zovko, and Double Z Enterprises, Inc.—a company owned by the Zovkos. The loans were executed on six separate occasions between October 2015 and October 2017, each memorialized by a promissory note and secured by mortgages on two properties which included the Zovkos' residence and the Double Z business property, both in Woodbridge Township. Patrick M. Nerney

2

was the attorney who represented Sklair in these transactions and prepared the notes and mortgages and notarized the parties' signatures at his office.

Despite being drafted and executed, none of these mortgages were ever recorded by Nerney or anyone else. As a result, Zoran Zovko was later able to refinance and sell the Double Z business property without the proceeds being used to pay down or satisfy the loans from Sklair, now the Estate. According to Zoran Zovko's testimony, proceeds from the sale and refinancing were instead used to pay various third parties, reportedly unsecured creditors in Serbia.

After Sklair's death, plaintiff Joseph Apuzzo, CPA, was appointed Executor of his estate. Discovering the outstanding and largely unpaid loans, Apuzzo, on behalf of the Estate, sought to recover the amounts owed which he had calculated to be $693,488. On February 5, 2020, Apuzzo filed suit against the Zovkos, Double Z, and Nerney. The complaint sought the collection of loan amounts, plus interest and penalties and production of Sklair's file from Nerney.

During pretrial proceedings, it was established that the mortgages prepared by Nerney were not recorded. Thereafter, the Estate filed an amended complaint which specifically alleged Nerney's professional negligence had caused the Estate damages and loss of its secured creditor status in bankruptcy.

A-3001-23

During the proceeding, the Zovkos had filed for bankruptcy, pausing the Law Division litigation by operation of the federal automatic stay under 11 U.S.C. § 362. Limited relief from the stay was obtained by the Estate, permitting the state court trial but forbidding any collection activity or steps beyond the pronouncement of judgment.

The trial, after being delayed by the bankruptcy filings, was ultimately held in December 2023. The issues at trial included: the amount owed by the Zovkos and Double Z and whether Nerney's failure to record the mortgages was legal malpractice, whether it was a proximate cause of damages to the Estate and the amount of damages, if any.

At trial, Apuzzo testified about his administration of the estate, discovery of the outstanding loans, requests made to Nerney for original documents, and attempts to recover the overdue loan amounts. He confirmed that some payments towards principal had been made by the Zovkos, totaling $413,512. The closing documents from the sale of the Double Z business property indicated the Zovkos and Double Z realized approximately $360,000 from the sale of the Double Z property in January 2021.

Zoran Zovko testified that the loans were paid, in substantial part, through a series of cash payments and other financial arrangements, and that the

A-3001-23

proceeds from the sale of the business property were used to pay various debts, including to third parties in Serbia. Zovko also claimed the loans' terms violated various consumer protection statutes.

Nerney testified and admitted he had primary responsibility for preparing the notes and mortgages and—per the clear language in the documents—had the responsibility to record the subject mortgages. He stated, "my firm, who took the primary responsibility to file this document, which says on the documents record and return . . . ." He acknowledged that the mortgages were never recorded and that this was an error in the performance of his legal services.

In its oral decision, the trial court determined that the Zovkos had paid $413,512 towards the loans but still owed significant debt to the Estate and that none of the six mortgages securing Sklair's loans were ever recorded. The court held the Zovkos and Double Z jointly and severally liable to the Estate finding the principal of $1,107,000 was owed, less payments of $413,512 and entered judgment against them for $693,488. The court found no interest was due based on the notes violating certain statutory requirements.

The court also determined that all claims against Nerney should be dismissed with prejudice. The court reasoned that although Nerney had breached his duty to the Estate by failing to record the mortgages, the doctrine

5

of avoidable consequences was applicable. The court found at the time the Estate filed its amended complaint against Nerney in May of 2020, it was aware of Nerney's failure to record the mortgages prior to the January 2021 refinance sale of the property by the Zovkos. The court determined the Estate could have mitigated or avoided its loss by recording the mortgages when this omission was discovered or could have filed a lis pendens. The court further found no direct evidence that the failure to record the mortgages by Nerney was the sole proximate cause of monetary loss to the Estate because the Estate was aware of the unrecorded mortgages prior to the sale by the Zovkos, and thus declined to hold Nerney liable for malpractice.

The Estate moved for reconsideration, arguing that Nerney's malpractice was a proximate cause of its damages and that the trial court had improperly raised mitigation defenses not asserted by Nerney. The motion was denied. This appeal followed.

On appeal, the Estate contends the trial court erred by: (1) determining Nerney's failure to record the mortgages was not the proximate cause of the damages incurred by the Estate; and (2) wrongfully creating the basis for dismissal against Nerney by sua sponte invoking the doctrine of avoidable

6

consequences which had not been asserted by defendant and without notice to the parties.

## II.

The standard of review of judgments or orders entered after bench trials is well settled. The findings of the trial judge are binding on appeal if they are supported by "adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. Of Am., 65 N.J. 474, 484 (1974) (citing N.J. Turnpike Authority v. Sisselman, 106 N.J. Super. 358 (App. Div. 1969)). Deference to the judge's factual findings is appropriate because the judge who saw and heard the witnesses testify "has a better perspective than a reviewing court in evaluating the veracity of witnesses." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). Nevertheless, we review a "trial court's interpretation of the law and the legal consequences that flow from established facts" de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

The doctrine of avoidable consequences "proceeds on the theory that a plaintiff who has suffered an injury as the proximate result of a tort cannot recover for any portion of the harm that by the exercise of ordinary care he [or she] could have avoided." Ostrowski v. Azzara, 111 N.J. 429, 437 (1988). "As

opposed to contributory negligence, the doctrine of avoidable consequences 'normally comes into action when the injured party's carelessness occurs after the defendant's legal wrong has been committed.'" Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 108-109 (1996) (quoting Ostrowski, 111 N.J. at 438).

Avoidable consequences are thus "[limited to] consideration of a plaintiff's fault to the time period that begins after a defendant's wrongful conduct." Del Tufo v. Twp. of Old Bridge, 147 N.J. 90, 120 (1996) (emphasis added) (citing Ostrowski, 111 N.J. at 438). "Unlike comparative negligence, the doctrine of avoidable consequences is not a defense to liability and serves only to mitigate damages." Komlodi v. Picciano, 217 N.J. 387, 412 (2014) (citing Ostrowski, 111 N.J. at 441). The doctrine "will reduce a recovery because a plaintiff cannot claim as damages the additional injury [a plaintiff] causes to herself [or himself] after a defendant commits a tortious act." Id. at 412-13.

III.

We first address the Estate's contention that the trial court erred in dismissing its complaint against Nerney finding Nerney's negligence was not the proximate cause of its injuries. To establish proximate causation and damages in a legal malpractice action, a plaintiff must first establish causation in fact, which "requires proof that the result complained of probably would not have

occurred 'but for' the negligent conduct of the defendant." Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996) (quoting Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 295 (App. Div. 1990)). Additionally, a plaintiff "must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin, 145 N.J. at 419). Finally, the plaintiff must "show what injuries were suffered as a proximate consequence of the attorney's breach of duty," ordinarily measured by "the amount that a client would have received but for the attorney's negligence." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994) (citation omitted). The burden is on the plaintiff to establish proximate causation and damages "by a preponderance of the competent, credible evidence." Ibid. (citing Long v. Landy, 35 N.J. 44, 54 (1961)).

The trial record exhibits that Nerney admitted he had a duty to file the original mortgages and breached this duty which fully supports a liability judgment against him. The undisputed evidence firmly supports that Nerney's breach of duty was a substantial factor in bringing about the Estate's harm despite a concurrent cause of the damages arising from Zovko's breach of the

notes. We determine substantial evidence existed in the trial record that Nerney's failure to record the mortgages was a proximate cause of the Estate's damages as this failure was a substantial factor in bringing about the damages.

In its decision on reconsideration, the court clarified that the doctrine of avoidable consequences "has its roots in the law of damages and it has application in the law of contract, as well as in the law of torts" and is "more properly [] addressed to the question of diminution of damages. It does not go to the existence of a cause of action." The court further found on reconsideration that "in the determination of damages, the [c]ourt must take into account those avoidable consequences and that is what the [c]ourt based its decision on."

Therefore, we conclude although the court may have misapplied the law in its initial decision by finding Nerney's negligence was not a proximate cause of the Estate's damages, it corrected course at the time of reconsideration and appropriately found proximate cause and liability against Nerney because the doctrine of avoidable consequences is not applicable to the cause of action and only applies to mitigation of damages.

We turn now to defendant's second contention on appeal asserting the court's sua sponte application of the doctrine of avoidable consequences was error. We determine the seminal question in this appeal is whether the Estate's

10

failure to record the mortgages or lis pendens after it became aware that Nerney failed to record them supported the court's application of the avoidable consequences doctrine to dismiss all claims against Nerney. The court seemingly determined the Estate could have completely mitigated its claimed damages if it had recorded the mortgages or filed a lis pendens once it became aware Nerney had not recorded them.

After reviewing the record, we have no disagreement with the trial court with respect to its finding that the Estate was aware of Nerney's failure to record the mortgages on or before May 8, 2020 when it filed its amended complaint specifically claiming Nerney breached his duty to Sklair and the Estate by failing to record the mortgages. We reiterate the doctrine of avoidable consequences comes into effect when the injured party's carelessness occurs after the defendant's legal wrong has been committed. The record is clear that plaintiff failed to record the mortgages even after it became aware that Nerney had failed to record them.

However, we conclude this is not the end of the inquiry. "[T]he burden of proving facts in mitigation of damages rest[s] upon the party" asserting such. Cohen v. Radio-Electronics Officers, 275 N.J. Super. 241, 262 (App. Div. 1994) (citing Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 28 (Ch. Div.

1952)); see also Sommer v. Kridel, 74 N.J. 446, 457 (1977) (wherein the Court stated, "generally [a] breaching party has the burden of proving that damages are capable of mitigation").

Furthermore, we have held:

> that (w)here both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act and it is equally reasonable to expect a defendant to minimize damages, the defendant is in no position to contend that the plaintiff failed to mitigate. Nor will the award be reduced on account of damages the defendant could have avoided as easily as the plaintiff . . . The duty to mitigate damages is not applicable where the party whose duty it is primarily to perform the contract has equal opportunity for performance and equal knowledge of the consequences of the performance.
>
> [Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 83 (App. Div. 1996) (quoting Toyota Industrial Trucks U.S.A, Inc. v. Citizens Nat'l Bank of Evans City, et al., 611 F.2d 465, 471 (3d Cir. 1979)).]

"Whether or not a plaintiff's efforts to mitigate his or her damages are reasonable is a question for the trier of fact." Id. at 84. "Thus, the proper standard in a non-jury case regarding the judge's decision on mitigation of damages 'is whether the judge's findings are supported by sufficient, credible evidence in the record.'" Ibid. (quoting Fanarjian v. Moskowitz, 237 N.J. Super. 395, 406 (App. Div. 1989)).

Although we recognize the above authority is related to contractual obligations, we conclude there is little difference between a party who breaches a contract and an attorney's breach of duty to a client in a legal malpractice tort claim. We determine both are breaches of a legal obligation by a defendant and are subject to the doctrine. Our Supreme Court has made clear that the doctrine of avoidable consequences "has application in the law of contract, as well as in the law of torts." Ostrowski, 111 N.J. at 437 (citing N.J. Indus. Properties, Inc. v. Y.C. & V.L., Inc., 100 N.J. 432, 461 (1985)). Therefore, we see no factual distinction in the present matter which would make the doctrine inapplicable to the professional negligence claim herein.

We also point out the record shows Nerney never asserted a mitigation defense based on the doctrine of avoidable consequences during the proceeding or at trial. On this basis, we conclude he failed to satisfy his burden of proof to mitigate the Estate's damages and the court's sua sponte invocation of the doctrine of avoidable consequences to support its dismissal of the Estate's claims against Nerney was a misapplication of its discretion.

Even if we determine the trial court's sua sponte application of the doctrine was permitted, the record shows not only was the Estate aware the mortgages were not recorded at the time of the filing of its amended complaint in May

13

2020, but Nerney was also made aware of his failure to record the mortgages at that time because he had been served with the complaint.

Following our holding in <u>Ingraham</u>, we conclude Nerney was not entitled to a dismissal of the Estate's claims against him because he "had equal opportunity to reduce the damages" by recording the mortgages post-complaint, before the refinance/sale by the Zovkos and Double Z. <u>Ingraham</u>, 297 N.J. Super. at 83. Here, the damages caused by Nerney's negligence by failing to record the mortgages should not be reduced to zero because Nerney could have avoided this outcome as easily as the Estate.

We conclude the duty of the Estate to mitigate damages is not applicable here, where Nerney, who admitted to his duty to record the mortgages, had an equal opportunity—for the second time—to record the documents and equal knowledge of the consequences for his failure to record the mortgages. Even if Nerney was concerned with his authority to file mortgages for a former client, he failed to apply to the court for an order permitting him to file the mortgages to carry out his duty to the Estate or failed to take any other actions to fulfill his duty to protect the secured interests of the Estate. Simply put, if Nerney had recorded the mortgages—or a lis pendens—after the filing of the amended complaint and before the refinance/sale by the co-defendants, the damages

14

caused by his negligence could have been avoided. We conclude there are no reasons in law or equity that Nerney's negligence should be completely abrogated under these circumstances based on the doctrine of avoidable consequences.

Since the trial court determined Nerney was negligent and proximately caused the Estate's damages, we reverse the court's order and remand with a directive to enter judgment against Nerney. On remand, the court shall conduct supplemental proceedings to determine the proper amount of damages to compensate plaintiff for Nerney's negligence. To that end, we note the Zovko defendants received over $360,000 which seemingly would have been subject to the Estate's secured interests if Nerney had recorded the mortgages. Those proceedings shall also address and resolve issues related to the allocation of responsibility between the parties including the determination of any crossclaims asserted by defendants.

Reversed, in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15