**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0666-18T3

XANADU AT WALL CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Appellant,

v.

AMBOY BANK, TKG MANAGEMENT,
LLC, THE KLEINER GROUP, LLC, PRC
GROUP, JEWEL CONTRACTING, INC.,
EDWARDS & COMPANY, EAST
COAST CONSTRUCTION SERVICES,
CORP., BP ROOF DECKS, FLOORS &
POOL DECKS, INC., F&C
PROFESSIONAL ALUMINUM & IRON
RAILING CORP., BLUE RIBBON
ROOFING & SIDING INC., ALPHA
CONTRACTORS, WANNA WINDOW,
Z BROTHERS (a/k/a Z BROTHERS
CONCRETE INC. or Z BROTHERS
MASON INC.), PRC PROPERTY
MANAGEMENT COMPANY, MARCH
ASSOCIATES, INC., MARCH
ASSOCIATES CONSTRUCTION,
SEALTITE SYSTEMS, SPIDER
CONSTRUCTION, d/b/a BRIAN RATTI,
d/b/a MINOR MORA, STAR BUILDERS,
WILSON B. CONSTRUCTION, INC.,
IMPERIAL CONTRACTING INC., A

BETTER SIDING, THUNDER SIDING CO., MAG CONSTRUCTION, NEMECIO ROOFING, OLDE TRADITIONAL CONSTRUCTION, BROTHERS ALL ROOFING, MARCIAL SIDING, OHIO CASUALTY INSURANCE COMPANY, ESSEX INSURANCE COMPANY, LM SIDING, GARY CONSTRUCTION & STUCCO, RK CONSTRUCTION, LLC, WOJCIECH JASONEK d/b/a ROYAL STUCCO, MPM-MATUSZAK CONSTRUCTION (a/k/a MPM-MATUSZAK CONSTRUCTION, INC.), BENCHMARK CONSTRUCTION, HCKS GENERAL CONTRACTORS, VALCOURT EXTERIOR BUILDING SERVICES OF NEW JERSEY, LLC, VIP CONSTRUCTION SERVICES, INC., and KSL CONSTRUCTION,

        Defendants,

and

OLD WORLD CONSTRUCTION, INC.[1] and ALL COUNTY EXTERIORS,

        Defendants-Respondents.

_____

LENAHAN ACQUISITIONS GROUP, LLC, d/b/a BLUE RIBBON ROOFING & SIDING, LLC,

        Third-Party Plaintiff,

---

[1] Improperly pled as Old World Construction.

A-0666-18T3

v.

SPIDER CONSTRUCTION, IMPERIAL
CONTRACTING, INC., d/b/a BRIAN
RATTI, STAR BUILDERS; d/b/a MINOR
MORA, WILSON B. CONSTRUCTION,
INC., A BETTER SIDING, THUNDER
SIDING CO., MAG CONSTRUCTION,
NEMECIO ROOFING, OLDE
TRADITIONAL CONSTRUCTION,
BROTHERS ALL ROOFING, and
MARCIAL SIDING,

       Third-Party Defendants.
_____

OLD WORLD CONSTRUCTION, INC.,

       Fourth-Party Plaintiff-
       Respondent,

v.

LM SIDING, GARY CONSTRUCTION
& STUCCO, RK CONSTRUCTION LLC,
WOJCIECH JASONEK d/b/a ROYAL
STUCCO, VALCOURT EXTERIOR
BUILDING SERVICES OF NEW
JERSEY, LLC, VIP CONSTRUCTION
SERVICES, INC., and KSL
CONSTRUCTION,

       Fourth-Party Defendants,

and

ALL COUNTY EXTERIORS, and

A-0666-18T3

MPM-MATUSZAK CONSTRUCTION
(a/k/a MPM-MATUSZAK
CONSTRUCTION, INC.),

      Fourth-Party Defendants-
      Respondents.

_____

ALL COUNTY EXTERIORS,

      Fifth-Party Plaintiff-
      Respondent,

v.

IMPERIAL CONTRACTING, INC.,
BENCHMARK CONSTRUCTION,
BRIAN R. RATTI, and HCKS GENERAL
CONTRACTORS,

      Fifth-Party Defendants.

_____

BENCHMARK CONSTRUCTION,

      Sixth-Party Plaintiff,

v.

NO PROBLEM CONSTRUCTION, LLC
and ART 4U STUCCO, LLC,

      Sixth-Party Defendants.

_____

      Argued February 5, 2020 – Decided February 26, 2020

      Before Judges Fuentes, Haas and Enright.

4

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4323-12.

Mark M. Wiechnik argued the cause for appellant (Ansell Grimm & Aaron, PC, attorneys; Breanne M. DeRaps and Mark M. Wiechnik, on the briefs).

Steven A. Weiner argued the cause for respondent All County Exteriors, LLC (O'Toole, Scrivo Fernandez Weiner Van Lieu, LLC, attorneys; Steven A. Weiner, of counsel and on the brief; Peter V. Koenig and R. Brant Forrest, on the brief).

Frank P. Menaquale, Jr., argued the cause for respondent Old World Construction, Inc. (Deasey Mahoney & Valentini, LTD, attorneys; Frank P. Menaquale, Jr. and Inna S. Keith, on the brief).

Stolz & Associates, LLC, attorneys for respondent MPM Matuszak Construction, Inc. (J. Elliott Stolz, on the brief).

PER CURIAM

In this construction defect case, plaintiff Xanadu at Wall Condominium Association, Inc. (plaintiff) appeals from the Law Division's March 19, 2018 order granting defendant Old World Construction, Inc.'s (Old World's) and defendant MPM Matuszak Construction's (MPM's) motions for summary judgment, and the court's April 30, 2018 order denying its motion for reconsideration. Plaintiff also challenges the court's June 26, 2018 order granting defendant All County Exteriors' (All County's) motion for summary

judgment, the August 31, 2018 order granting All County's motion for counsel fees and costs, and a September 19, 2018 consent order vacating the counsel fee award as to a separate party, Benchmark Construction (Benchmark). Having reviewed plaintiff's contentions in light of the record and applicable law, we affirm substantially for the reasons expressed by Judge Dennis O'Brien in his thoughtful oral opinions addressing each of the matters at issue.

## I.

The parties are fully familiar with the lengthy procedural history and facts of this matter. Therefore, we need only recite the most salient facts here and, like Judge O'Brien, view them in the light most favorable to plaintiff,. Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

Plaintiff is an active adult community in Wall Township that consists of two residential buildings (Building A and Building B) with a total of 110 units and a clubhouse. Plaintiff's facilities (the project) were constructed between 2005 and 2008.

The original owners of the project were TKG Management, LLC, and The Kleiner Group (collectively, TKG). TKG contracted with Adam Dentinger,

president of Jewel Contracting, Inc. (Jewel) to be the general contractor for the project.

On October 12, 2006, Old World made a proposal to Jewel to provide stucco and stone work for Building B at a price of $635,881. Jewel accepted the proposal, but Old World and Jewel did not sign a formal contract.

Krzysztof Oprzadek, president of Old World, stated that the company had no employees in 2006 and 2008 and, instead, hired subcontractors. Old World hired six subcontractors for the project, including MPM. Oprzadek did not know which of his subcontractors worked on various aspects of the project. Old World had no written contracts with the subcontractors, and invoices were the only documents indicating what work they performed. Old World supplied materials and paid the subcontractors for their labor. According to Oprzadek, Old World's subcontractors interacted with Jewel's project managers. In other words, Old World financed the job, but Jewel controlled the work.

In December 2006 and March 2007, MPM sold stone to Old World for $4660 and stucco for $400 for the project. This was MPM's only involvement in the project.

According to Oprzadek, it was well-known among the contractors that the flashing on the project's balconies had been improperly installed, but Old

7

World's subcontractors did not participate in installing that flashing. On January 2, 2007, a representative of Old World sent a fax to Jewel stating that the flashing on the balconies was improperly installed and could potentially cause leakage and that Old World would not take responsibility for this defect. Oprzadek reported that while Old World subcontractors were working on the site, a different contractor was repairing the balconies and installing flashings, but Oprzadek did not know the name of that contractor.

Old World's subcontractors worked on the project for about a year. Jewel did not pay Old World until its project manager signed off on the subcontractors' work.

TKG hired Edwards and Company (Edwards), a consultant, to investigate the viability of the building envelope, including water leakage. Edwards prepared a punch list for repairs to the facility but, according to Oprzadek, none of the repairs on the punch list pertained to work performed by Old World's subcontractors.

According to Dentinger, Edwards did not sign off on the building until the leaks in the balconies were repaired. In 2007, Dentinger left Jewel. By that time, Edwards had signed off on the roof, stone and stucco work, and so did the project's architect. On January 8, 2008, TKG terminated Jewel.

A-0666-18T3

In 2007, Jewel and TKG declared bankruptcy. Amboy Bank took over the project and hired a different general contractor to finish it.

Gennadii Boitchenko had worked for TKG as an "owners['] representative" beginning in 2006, and he was on site at the project daily. In 2008, TKG laid him off. In early 2009, Joel Krinsky, who was acting as a receiver, hired Boitchenko to complete the unfinished units at the project.

A homeowner in Building A complained about water leakage on his balcony and Krinsky asked Boitchenko to repair the project's balconies. Boitchenko's company, GNR Construction (GNR), began to repair the balconies and hired VIP Construction Services (VIP) and KSL Construction as subcontractors. From June to September 2009, GNR repaired the balconies.

In October 2009, plaintiff hired PRC Property Management Co., LLC (PRC) to manage the property and Joe Thompson was its representative. The repair of the balconies in Building B had not been completed. All County made a proposal to repair the balconies and PRC accepted it. In October 2009, All County replaced GNR as the contractor handling the balcony repairs. According to Thomasz Kopciowski, Benchmark's foreman, Benchmark performed all the balcony repair work for All County, and All County, itself, did not perform any

of the work. Benchmark's subcontractors were Art 4U Stucco and No Problem Construction, LLC (No Problem).

To repair the balconies, the stucco and masonry needed to be removed. All County hired Benchmark for stucco removal and reinstallation and Brian Ratti for repairing the decks. Benchmark hired No Problem to do the wood framing. All County provided supplies, but it did not supervise Benchmark or No Problem. PRC inspected and signed off on the work of Benchmark and its subcontractors. Benchmark and its subcontractors began the repair work in the Fall of 2009 and continued for eight months.

Anthony Valentine had worked for TKG as project superintendent and continued with PRC. The balcony repair was performed under Valentine's close supervision. After each balcony was repaired, Robert Torrance, on behalf of Wall Township, inspected it.

Benchmark and All County signed multiple agreements that described their relationship. For example, agreements dated April 2004, March 2005, and April 2010 specified that Benchmark indemnified All County from any liability and would pay All County's attorney's fees for any lawsuit pertaining to Benchmark's work, unless All County was actually solely or willfully negligent.

On January 27, 2014, plaintiff's expert, Daniel Ciarcia, filed a report on the cladding[2] of plaintiff's buildings. Ciarcia identified thirteen separate construction defects including improper lath[3] orientation and attachment, weep screed[4] installation, gutter installation and flashing. He estimated it would cost $3.7 million to fix these defects.

Ciarcia's report disclosed that "'patching' had been performed on the exterior cladding system at various locations." Significantly, Ciarcia could not ascertain whether the defects should be attributed to the original construction or the later repair. Therefore, he stated he grouped all of the defects together as "original construction defects." Nevertheless, Ciarcia continued to acknowledge that "balcony repairs were completed on building B in 2009 by multiple contractors . . . but the full scope of the repair is presently unknown."

---

[2] "Cladding" is the application of one material over another to provide a skin or layer. In construction, cladding is used to provide a degree of thermal insulation and weather resistance, and to improve the appearance of buildings.

[3] "Lath" is a thin, flat strip of wood, especially one of a series forming a foundation for the plaster of a wall or the tiles of a roof, or made into a trellis or fence.

[4] "Weep screed" is a building material used along the base of an exterior stucco wall that serves as a vent so that the moisture can escape the stucco wall finish just above the foundation.

On May 16, 2014, Ciarcia provided two supplemental reports: one pertaining to plaintiff's ventilation, vinyl siding, and roof, and one describing its balconies. Ciarcia found construction defects and estimated the cost of repair to be $536,000 for the ventilation, siding and roof, and $493,000 for the balconies.

For the balconies report, Ciarcia made invasive inspections at Building B units 2208, 2209, 2210, 2302 and 2318; large-scale invasive protocols on three units in Building A (1305, 1205, and 1105); invasive inspections of three balconies in Building A (1306, 1206 and 1106); small-scale target invasive investigations at thirty-five locations in Buildings A and B; and noninvasive visual inspection of thirty-three balconies, twenty-one of which were in Building B. Ciarcia found multiple defects, and also noted that there was an absence of fire-rated gypsum board and fire-resistant plywood decking on the balconies. He concluded that the workers who performed the 2009 repairs were responsible for the water damage to the balconies. Ciarcia again conceded that "although we have identified some 'areas of repairs' versus 'original construction' we are not aware of all repairs that may have been made by the developer."

Ciarcia's report disclosed that according to Wall Township, four contractors had repaired the balconies in October 2009, including All County, GNR, Valcourt

12

Exterior Building Services of New Jersey (Valcourt) and VIP. Ciarcia provided an appendix which described which contractor repaired each balcony. Of the five Building B units for which Ciarcia performed an invasive inspection and found significant damage (2208, 2209, 2210, 2302 and 2318), his appendix indicated that All County had only repaired two (2208 and 2210). The others were repaired by GNR. However, All County's invoices did not reflect repair of either of those units.

On October 15, 2012, plaintiff filed a complaint against a number of the contractors and subcontractors that participated in the building and repairing of its facility. The complaint included counts for negligence, breach of warranty, strict liability, and breach of contract. Plaintiff amended the complaint several times, adding additional defendants. Plaintiff eventually named Old World as a defendant, and Old World brought a fourth-party complaint against its subcontractors, including MPM. All County brought a fifth-party complaint against its subcontractors.[5]

As noted above, Benchmark, All County's subcontractor, had signed an agreement to indemnify All County from all claims of negligence related to

---

[5] Of all the contractors and subcontractors involved in the litigation, only Old World, MPM and All County are participating in the appeal.

A-0666-18T3

Benchmark's work, and to pay All County's attorney's fees for any claim arising out of that work. On September 26, 2016, All County requested defense indemnification from Benchmark.

On September 1, 2017, plaintiff settled with Benchmark. The settlement agreement provided that plaintiff would indemnify Benchmark from all claims and would assume Benchmark's obligations and liabilities to All County. On November 1, 2017, plaintiff stipulated to a dismissal with prejudice of Benchmark.

On March 19, 2018, Judge O'Brien granted summary judgment to Old World and MPM, and subsequently denied plaintiff's motion for reconsideration of that order. On June 26, 2018, the judge granted All County's motion for summary judgment. On August 31, 2018, the judge ordered plaintiff and Benchmark to pay attorney's fees of approximately $175,000 to All County. On September 7, 2018, All County and Benchmark executed a consent order stating that Benchmark was not required to pay All County's fees. On September 19, 2018, the court vacated the order as to Benchmark, holding only plaintiff liable for fees. This appeal followed.

II.

14

In Point I of its brief, plaintiff argues that Judge O'Brien erred in granting summary judgment to Old World and MPM. We disagree.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540). If there are no genuine issues of material fact, we must then decide whether the trial court correctly interpreted the law. See Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). We accord no deference to the trial judge's conclusions on issues of law and review those issues de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

As thoroughly explained in his oral decision rendered on March 16, 2018, Judge O'Brien granted summary judgment to Old World and MPM because plaintiff failed to establish negligence on the part of either of these parties. Indeed, although plaintiff's expert, Ciarcia, found defects on the balconies, he also conceded that the balconies were repaired in 2009 by a different contractor

after the completion of the construction work by Old World's subcontractors. As for MPM, the only evidence in the record of MPM's work on the project consisted of two invoices for the sale of materials.

In determining that Old World and MPM could not be held liable for any defects, the judge applied well-settled rules governing negligence actions. "[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). The third element, proximate cause, is established by showing that the negligent conduct was a "substantial contributing factor" in causing damages. Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982) (citing State v. Jersey Cent. Power & Light Co., 69 N.J. 102, 110 (1976)). If there is no factual dispute regarding the existence of proximate cause, the court may grant summary judgment. Sheculsky v. Garjulio, 172 N.J. 185, 200 (2002).

"Negligence is a fact which must be shown and which will not be presumed." Long v. Landy, 35 N.J. 44, 54 (1961). The mere showing of an incident which might give rise to negligence is not enough. Ibid. The burden of proof is on the plaintiff to show negligence and cannot be met based on conjecture. Ibid. In addition, "expert testimony is required when 'a subject is

so esoteric that jurors of common judgment and experience cannot form a valid conclusion.'" Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 236 (App. Div. 2012) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 450 (1993)).

When a person engages a contractor who conducts an independent business with its own employees, the person is not liable for the negligence of the contractor unless he or she retains control of the "manner and means of the doing of the work which is the subject of the contract"; or he or she engages an incompetent contractor; or where the activity constitutes a nuisance. Majestic Realty Assocs., Inc. v. Totti Constr. Co., 30 N.J. 425, 431 (1959).

Here, Ciarcia stated numerous times that he could not ascertain what work was done by Old World and what was the result of "patching" repairs performed in 2009. Moreover, Ciarcia made invasive inspections of units that Old World's subcontractors did not work on. Ciarcia did not provide any evidence that the leaking problems could be traced with clarity to the original construction of the project. Some construction defects found by Ciarcia were not related to the water damage discussed in plaintiff's complaint, such as the absence of fire-resistant materials. Thus, Judge O'Brien properly concluded that plaintiff did not present any

evidence that established that the leaking balconies were the result of the original construction work performed by Old World or materials supplied by MPM.

Plaintiff argues that the judge erred because the contractors avoided liability by keeping work specifications vague and by hiring multiple subcontractors to perform work without formal contracts. However, plaintiff did not provide evidence that any of Old World's subcontractors improperly installed the stucco or caused the leaking. Ciarcia could not state with certainty that the water problems were caused by Old World and its subcontractors. When the balconies leaked in 2009, different contractors were hired for repairs, and plaintiff never contacted Old World. Old World was not required to state which of its subcontractors had performed specific work on the project because plaintiff did not present evidence that Old World's subcontractors were negligent. And, as discussed above, plaintiff failed to establish that MPM did anything more than supply some stone and stucco for the project.

In sum, plaintiff provided no evidence that created a material factual dispute regarding the negligence of Old World and MPM, and taking the allegations in the light most favorable to plaintiff, the record amply supported the finding that MPM and Old World did not proximately cause the damage to the project. Therefore, we affirm the judge's decision to grant summary judgment to Old World and MPM.

A-0666-18T3

III.

In Point II, plaintiff argues that Judge O'Brien mistakenly denied its motion for reconsideration of the grant of summary judgment to Old World and MPM.  Again, we disagree.

We review the denial of a motion for reconsideration to determine whether the trial court abused its discretion.  <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 389 (App. Div. 1996).  "Reconsideration cannot be used to expand the record and reargue a motion."  <u>Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi</u>, 398 N.J. Super. 299, 310 (App. Div. 2008).  A motion for reconsideration is meant to "seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record."  <u>Ibid.</u>

For these reasons, reconsideration should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]"  <u>Cummings</u>, 295 N.J. Super. at 384 (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)).  Therefore, we have held that "the magnitude of the error cited must be a game-

19

changer for reconsideration to be appropriate." <u>Palombi v. Palombi</u>, 414 N.J. Super. 274, 289 (App. Div. 2010).

After reviewing the record in light of these principles, we discern no basis for disturbing Judge OBrien's reasoned determination denying plaintiff's motion for reconsideration. In seeking reconsideration before the trial court, and again in this appeal, plaintiff merely repeated the same arguments it unsuccessfully raised in opposition to Old World's and MPM's motions for summary judgment. Plaintiff failed to show that the judge's opinion was based on a palpably incorrect or irrational basis, or that the judge did not consider the competent evidence in the record. That evidence was insufficient to establish that Old World or MPM proximately caused the defects at the project. Therefore, we reject plaintiff's contention on this point.

IV.

In Point III of its brief, plaintiff argues that the judge erred in granting All County's motion for summary judgment. For many of the same reasons discussed in Section II concerning the motions filed by Old World and MPM, plaintiff's contention on this point also lacks merit. Plaintiff's expert was simply

20

unable to demonstrate that All County was the proximate cause of plaintiff's damages.

In addition, even if All County had worked on the balconies, it could not be held liable for the work of its subcontractor, Benchmark, because of the indemnification agreements between those two parties. Benchmark indemnified All County from any claim of negligence, and it was undisputed in the record that Valentine, a representative of PRC, controlled the work of All County's subcontractors. Thus, there was no material factual dispute sufficient to stand in the way of summary judgment.

Plaintiff argues that Judge O'Brien should not have enforced the indemnification agreements because they were allegedly ambiguous on the question of whether Benchmark indemnified All County for All County's own negligent acts. In support of this contention, plaintiff cites Englert v. Home Depot, 389 N.J. Super. 44, 54 (App. Div. 2006). In Englert, the court found the indemnification clause ambiguous because it stated that the subcontractor would indemnify the contractor from any loss "to the extent caused" by a negligent act of the subcontractor, "regardless of whether it is caused in part by a party indemnified" in the agreement. Id. at 48. By contrast, here the indemnification agreement stated:

> All work covered by this Agreement done at the site of construction  . . . shall be at the risk of Subcontractor alone.  Subcontractor agrees to save, indemnify and keep harmless [All County] against any and all liability, claims, judgments, or demands, . . . arising directly or indirectly out of the obligations herein undertaken or out of the operations conducted by subcontractor, save and except claims or litigation arising through <u>the sole negligence [or] sole willful misconduct of</u> [All County].

Thus, the language in the All County and Benchmark agreement did not include the "to the extent caused" and "regardless of" language found in <u>Englert</u>. In addition, the provision unambiguously states that All County will be indemnified except for claims or litigation arising through its "sole negligence [or] sole willful misconduct."  Here, the claims clearly did not arise out of All County's sole negligence or sole willful misconduct.  Therefore, the indemnification agreements are unambiguous and, accordingly, Judge O'Brien properly found them enforceable.

V.

Finally, plaintiff asserts in Point IV of its brief that the judge abused his discretion by awarding counsel fees and costs to All County, and relieving Benchmark from any liability for these fees.  This argument lacks sufficient

22

merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We add only the following brief comments.

Attorney "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).  Here, Benchmark agreed to indemnify All County and pay its attorney's fees.  Thereafter, when plaintiff settled its claims against Benchmark, plaintiff voluntarily assumed all of Benchmark's responsibilities with respect to All County, including the requirement that it pay All County's fees and costs.  Thus, Judge O'Brien plainly did not abuse his discretion by ordering plaintiff to pay the fees in accordance with its own agreements.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0666-18T3