**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2404-21

MANSOUR S. MANSOUR,

    Plaintiff-Appellant,

v.

GEMINI RESTORATION, INC.,
RAMESH BENIMADHO,
R. BENIMADHO & SON
ELECTRICAL CONTRACTORS,
STAN PALAKA, and TOP NOTCH
CLIMATE CONTROL, LLC,

    Defendants-Respondents.

_____

Submitted September 19, 2023 – Decided November 17, 2023

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0087-20.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

Leary, Bride, Mergner & Bongiovanni, attorneys for respondents Ramesh Benimadho and R. Benimadho &

Son Electrical Contractors, Inc. (David J. Dering, of counsel and on the brief).

Sweeney & Sheehan, attorneys for respondents Stan Palaka and Top Notch Climate Control, LLC (Gaetano Mercogliano, of counsel; Louis J. Vogel, Jr., of counsel and on the brief).

Zirulnik DeMille & Flynn, attorneys for Gemini Restoration (Everett E. Gale and Courtney E, Dowd, on the brief).

PER CURIAM

Plaintiff Mansour S. Mansour appeals from the trial court's order granting summary judgment in favor of defendants Gemini Restoration (Gemini), Ramesh Benimadho of R. Benimadho & Son Electrical Contractors (Benimadho) and Stan Palaka of Top Notch Climate Control, LLC (Top Notch). Plaintiff contends defendants are liable for a fire in his home, which originated in a location where defendants had completed renovations. The trial court found plaintiff's expert did not articulate an appropriate duty that defendants owed to plaintiff and failed to identify the cause of the fire. For the reasons which follow, we affirm.

I.

After plaintiff's home sustained flood damage in 2014, his insurance carrier supplied a list of recommended contractors to make necessary repairs.

A-2404-21

Plaintiff selected Gemini. Gemini hired two subcontractors: Benimadho and Top Notch. Benimadho performed the electrical wiring repair work and Top Notch performed the plumbing repair work.

On December 27, 2017, a fire damaged plaintiff's home, rendering it uninhabitable. Plaintiff also suffered extensive property damage and personal property loss. Plaintiff's home insurance carrier paid damage related claims in the amount of $548,121.23 for the dwelling and $161,697.00 for personal property. The carrier sent the payments to Wilmington Savings Fund Society as payoff under a final judgment, as plaintiff's home was in foreclosure.

The Ocean County Prosecutor's Office issued an arson Investigation Report, the day after the fire on December 28, 2017, which concluded the fire originated in the ceiling area "above the shower" in the basement bathroom where defendant contractors had performed the disputed work three years ago. Their report noted oxidation on the metal duct and pipe work in the ceiling, and that the shower enclosure had "melted from the top down approximately two feet from the ceiling." Next, the report stated, "all these observations indicate that the fire . . . burned hotter and longer in this area compared to other areas of the basement." The detectives concluded that the fire was not caused by arson,

and that "a failure in energized electrical wiring cannot be eliminated as the cause of the fire."

Plaintiff sued defendants for damages arising from the house fire, claiming the damages exceeded his homeowner's insurance carrier payout. Plaintiff's liability theories included common law fraud, violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, and negligence. Following discovery, both parties moved for summary judgment.

At oral argument, plaintiff relied solely on the arson report and an expert report by professional engineer Timothy Geis of Trident Engineering, Inc., dated September 1, 2021. Geis inspected the fire scene three and a half years after the fire occurred, during July and August 2021. In his report, Geis first noted that the light fixture he observed hanging from the ceiling in 2017 photographs taken by the prosecutor's office was now buried beneath debris on the shower floor. He further noted that the wires that had previously connected the shower stall light to the "ground conductor" in the ceiling were cut. Geis stated:

> While it appears that the fire started above the shower, this cannot be absolutely confirmed, as a fire origin could not be found. It is [his] strong opinion, however, that the fire did start above the shower as this was the most burned area found in the home. If the shower light had been left on, it is possible that the lighting module inside the light fixture could have been the origin of the

A-2404-21

fire.  This, however, cannot be confirmed.  There were no flammable fuel sources above the fire.

Geis concluded, "[t]he origin and cause of the fire cannot absolutely be determined.  The fire most likely started and burned for the most time in the ceiling area above the basement shower.  This was most likely the origin point of the fire."

The trial court granted defendants' motion for summary judgment and denied plaintiff's cross-motion.  The court found plaintiff's expert failed to give an opinion on duty or causation.  Plaintiff then moved for reconsideration and submitted a supplemental expert report dated March 30, 2022, which further supported his negligence claim.

At the reconsideration motion, plaintiff argued his claims were viable under the CFA due to defendants' lack of permitting and licensing, and that there were certain factual issues regarding Palaka's liability.  The trial court denied reconsideration in an order dated April 1, 2022, refusing to consider the late supplemental report.

Plaintiff contends the trial court erred:  by granting summary judgment; denying reconsideration; and rejecting his CFA claims.

II.

A-2404-21

In reviewing the grant or denial of summary judgment, the standard of review is de novo; this court will use the same standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). It decides first whether there was a genuine issue of fact. If there wasn't, this court is required to "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) ("[T]his [c]ourt must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law.").

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would

6

require submission of the issue to the trier of fact." R. 4:46(c). The judge must engage in a weighing process and decide whether:

> the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. . . . If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J 520, 540 (1995) (citation omitted).]

Thus, "when the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Ibid. (citation omitted). The trial court must not decide issues of fact: it must only decide whether there are any such issues. Ibid.

### III.

In addition to arguing that his expert's opinion passes muster, plaintiff argues the trial court erred by granting summary judgment on his CFA claims, and by denying reconsideration. He raises for the first time on appeal the argument that res ipsa loquitur should apply to defeat summary judgment. We are not persuaded, as the dispositive issue on all claims is plaintiff's absence of proof on causation.

7

To sustain a cause of action for negligence, a plaintiff must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). A plaintiff "must establish the existence of negligence 'by some competent proof,'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (quoting Townsend, 221 N.J. at 51). Negligence "'must be shown and . . . will not be presumed . . .The mere showing of an incident[]is not alone sufficient to authorize the finding of an incident of negligence." Ibid. (quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

"[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a judgment as to whether the conduct of the [defendant] was reasonable.'" Davis v. Brickman Landscaping, 219 N.J. 395, 407 (2014) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). We require an expert "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Townsend, 221 N.J. at 55.

A-2404-21

The trial court's assessment that plaintiff was required to present an expert to testify, because both the origin and cause of fires are beyond the ken of the average juror, was proper. We do not expect jurors of common judgment and experience to "form a judgment as to whether the conduct of [defendants] was reasonable." Davis, 219 N.J. at 407. The burden is on plaintiff to establish an applicable standard of care and a breach thereof. We conclude plaintiff's expert falls short.

There were three defendants: Gemini, the general contractor; Top Notch, the plumbing subcontractor; and Benimadho, the electrical contractor. In his report, Geis did not establish an applicable standard of care by which a jury could measure each defendant's conduct. He also did not "identify the factual bases for [his] conclusions, explain [his] methodology, and demonstrate that both the factual bases and the methodology are reliable." 221 N.J. at 55. Such an opinion places a jury in the unenviable position of being forced to speculate about the reasonableness of defendants' conduct. On this record the court properly found plaintiff's expert failed to identify an applicable standard of care.

Turning to causation, we note plaintiff's case rested on two reports: the initial arson report and Geis's expert report. The arson report contained a two-sentence conclusion:

It is the opinion of this detective that this fire originated between the basement ceiling and first floor subfloor, over the basement on the South side of the structure. The cause of the fire is accidental, a failure in energized electrical wiring cannot be eliminated as the cause of the fire.

While the arson report does not eliminate faulty electrical wiring as a cause of the fire, it clearly does not implicate defendants on causation. The report does not identify any defendant by name, nor does it highlight any defendant action or inaction which may have caused the fire. Next, the report does not provide an analysis or explanation of the conclusions reached by its author. It rules out arson, but offers no guidance on the central question of causation.

As for Geis's report, it states:

The possible origins of the fire . . . were investigated. Although one or more of these could not be ruled out as possible origin of the fire, there was no solid evidence that any of them did originate the fires. Therefore, Trident was unable to determine the exact cause of the fire.

A careful reading of the report shows Geis did not express an opinion to a reasonable degree of scientific probability as to the cause of the fire. When we consider this fact together with Geis's admission that he "was unable to determine the cause of the fire," we conclude that his expert report constitutes an inadmissible net opinion.

10

Plaintiff next contends he has a viable cause of action under the CFA, and that the trial court erred in dismissing this claim on summary judgment. Plaintiff argues that Gemini's failure to secure permits violated the CFA, and that because of this he suffered an ascertainable loss.

Plaintiff cites Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994), as support for his argument that the failure to secure permits allowed defendants to perform their work in a substandard manner without government supervision or inspection. Plaintiff contends defendants' failure to secure permits in violation of the CFA amounts to negligence. Plaintiff points out numerous supporting arguments to buttress its CFA claim. The arguments include: Gemini improperly used defective ceiling tiles not specified in the contract; Top Notch's lack of a plumbing license as required by N.J.S.A.45:14C-1 kept it from securing permits for the plumbing work; and Benimadho's history of negligence in performing electrical work.

"In analyzing claims under the CFA . . . there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009) (citing Int'l Union of Operating Eng'rs Local No. 68 Welfare

Fund v. Merck & Co., Inc., 192 N.J. 372, 389 (2007)). A finding of a CFA violation does not necessarily result in recovery under the CFA, as the plaintiff must still demonstrate causation and ascertainable loss. Perez v. Professionally Green, LLC, 215 N.J. 388, 401 (2013).

Plaintiff's reliance on Cox is misplaced. In Cox, a homeowner sued Sears for breach of contract and violation of the CFA after it contracted to do a kitchen renovation. 138 N.J. at 8. The trial record showed: Sears's work was visually unappealing; its electrical wiring installation was substandard and incomplete; it failed to comply with construction codes and related regulations; and Sears did not secure permits. Ibid. In Cox, plaintiff proffered an expert witness who testified thoroughly on causation, explaining that the entire kitchen had not been rewired, and what new wiring had been installed did not meet code. Id. at 9. The expert further testified that the electrical wiring amounted to a dangerous, concealed defect. Ibid. The court therefore found Sears liable under the CFA. Cox is readily distinguishable from this case on the crucial issue of causation.

Geis provided no such detail, and plaintiff failed to present sufficient evidence on causation. Insufficient causal connection is just as fatal to plaintiff's CFA claim as it is to his negligence claim. This remains so even if plaintiff can

demonstrate a CFA violation, as the violation must cause the ascertainable loss, and plaintiff has not cleared that hurdle.

Finally, plaintiff submits the trial court erred by denying his motion for reconsideration when it failed to consider plaintiff's expert evidence and the 2017 arson report in the light most favorable to him.  This argument suggests that plaintiff misreads our well-settled jurisprudence concerning expert testimony in negligence matters, and we do not accept the premise of his argument.  With that caveat, we disagree.

A motion for reconsideration is "primarily an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornblueth v. Westover, 241 N.J. 289, 301 (2020) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)).  Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion. . . ." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

Rule 4:24-1(c) states in relevant part: "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless

13

exceptional circumstances are shown."  Exceptional circumstances can be shown when " (1) counsel is diligent in pursuing discovery during the discovery time period; (2) the additional discovery or disclosure sought is essential to the case; (3) the reason why counsel failed to request an extension of discovery within the original discovery period is provided; and (4) the circumstances surrounding the failure to complete discovery are clearly beyond the control of both the attorney and the litigant seeking the extension." Zadigan v. Cole, 369 N.J. Super. 123, 133 (Law Div. 2004).  The trial court properly disregarded the late supplemental expert report, as plaintiff failed to show exceptional circumstances warranting its use pursuant to Rule 4:24-1(c).  Plaintiff did not meet his burden on reconsideration, as he did not demonstrate that the trial court: "made its decision upon a palpably incorrect or irrational basis"; or "did not consider, or failed to appreciate the significance of probative, competent evidence." Kornblueth, 241 N.J. at 301 (quoting Guido, 202 N.J. at 87-88).  A motion for reconsideration is not an opportunity for plaintiff to secure a "second bite at the apple."  We find no abuse of discretion.

We note plaintiff raises res ipsa loquitur the first time on appeal.  While we "ordinarily will not consider issues that were not presented to the trial court" State v. Arthur, 184 N.J. 307, 327 (2005) (citing Nieder v. Royal Indem. Ins.

Co., 62 N.J. 229, 234 (1973)), we make the following short observation. Plaintiff cites several cases to support his theory involving defendant contractors which had exclusive control of the premises and instrumentalities which caused the fire. The record shows defendants surrendered exclusive control of the premises and any instrumentalities suspected of causing the fire years before its occurrence in 2017. Again, absence of proof on causation is fatal to plaintiff's latest theory of recovery.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2404-21